(120 App. Div. 334)

### PEOPLE v. ROSENBERG.

(Supreme Court, Appellate Division, First Department.   June, 1907.)

BURGLARY—EVIDENCE—SUFFICIENCY.

Evidence examined, and *held* insufficient. to sustain a conviction of burglary in the third degree.

Appeal from Court of General Sessions, New York County.

Barnet Rosenberg was convicted of burglary in the third degree, and he appeals.   Reversed, and new trial ordered.

Argued before McLAUGHLIN, INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Aaron J. Levy, for appellant.
E. Crosby Kindleberger, for respondent.

LAUGHLIN, J.   The defendant was jointly indicted with Hyman Hillowitz, Frank Smith, and John Nolan on three counts (1) for

burglary in the third degree, for breaking into and entering the tailoring shop of Samuel Zwang with intent to steal, take, and carry away property; and (2) for grand larceny in the second degree, for stealing from the same premises three coats of the value of $15 each, two other coats of the value of $12 each, six pairs of trousers of the value of $7 each pair, and two skirts of the value of $12 each; and (3) for criminally receiving stolen property, in receiving and having the property described in the second count, knowing the same to have been stolen. Defendant Smith pleaded guilty. The appellant and Hillowitz were tried together, and both convicted. The learned counsel for the people informed us on the argument, and states in his brief, that Nolan, the other defendant who demanded a separate trial, was convicted four days after the conviction of the appellant.

We are of opinion that there is grave doubt as to whether the appellant is guilty of the crime for which he has been convicted, and that he should have a new trial. It was shown that he previously bore a good character, and was employed regularly as a traveling salesman and bookkeeper at $15 per week by the firm of M. Rosenberg & Son, at No. 14 Cooper Square, composed of his father and brother. There is no direct evidence connecting him with the burglary. His room was searched by the officers, without a warrant and wholly on suspicion, because he happened to be living in a boarding house where two of the other defendants were found in possession of part of the stolen property. According to the testimony of the two officers who made the arrest, two pairs of the stolen trousers were found on a chair in his room, and he admitted that they belonged to him. His conviction is based entirely on this alleged admission, and on evidence tending to identify the trousers as part of the property that was stolen. Testifying in his own behalf, he denied having made the admission to the officers, and denied knowledge that the trousers were found in his room, and says that the first announcement made by the officer who awoke him was to place him under arrest, without stating the cause or searching the room. A pawn check for an overcoat, being part of the stolen property, was found in a drawer in his room after he had been arrested and taken to the station house, but he was not asked about the pawn check, and there is no evidence that he pawned the coat or had possession of the pawn check, and no attempt appears to have been made to have him identified by the pawnbroker, or to show who pawned the coat. One of the two officers who testified that appellant admitted ownership of the trousers would not deny that he had said to appellant, after the arrest, that there was no evidence against him. It appears that Smith, who pleaded guilty, and Nolan, who was subsequently convicted, protested to the officers that the appellant had no connection with the crime. If the pawn check and two pair of trousers were found in his room, it may be that the other defendants, with a view to secreting the property, placed them there without the knowledge of appellant and while he was asleep. The evidence shows that an overcoat stolen at the same time was found in his room, and that he made no claim thereto. It appears that appellant was fully dressed and lying on his bed asleep when the officers entered his room, between 10 and 11 o'clock a. m., the morning the

burglary was. committed. He testified that he drank to excess the
night before, and did not arrive at his room until about 1:30 a. m.
The premises burglarized were No. 121 East 123d street. At about
3:10 a. m., October 25th, Officer Teeven, who resided opposite the
store which was burglarized, while on his way from the police station
down Lexington avenue toward his home, without knowing that the
store had been burglarized, saw the defendants Smith and Hillowitz
coming up Lexington avenue on the opposite side from toward Park
avenue and 123d street, each carrying clothes on or under his arm, and
"gave them chase," but was unable to capture them. On resuming his
journey home, he found the front door of the store open, and discovered
that the lock had been broken or forced open. He knew that the de-
fendant Smith resided at No. 2094 Lexington avenue, opposite the
police station, and, when he and Officer Gammer returned to the police
station, after arraigning their prisoners that morning, they concluded
to watch No. 2094 Lexington avenue, where Smith lived, which was
a "furnished rooms" house. They soon observed defendant Hillowitz
and Nolan leave the building, each with a parcel, and go up Third
avenue. They followed and arrested them as they were approaching
a pawn shop near 128th street. Each prisoner had some of the stolen
property, and a pawn check for a stolen overcoat was found on Hil-
lowitz. After taking their prisoners to the station house, they returned
and entered No. 2094 Lexington avenue. They entered the appellant's
room, which was the front parlor on the ground floor, and Officer
Teeven placed him under arrest, and Officer Gammer went upstairs,
and arrested Smith while in the act of throwing some of the stolen
property from the roof. They also arrested one Wernstein, found in
the building. Officer Teeven recognized Nolan as the man whom he
saw with Smith and chased in the early morning. The officers entered
the building with a view to arresting Smith, and it is quite probable
that they concluded to arrest on suspicion all men found there. The
police officers had it in their power to clear up the doubt concerning
the appellant's guilt by ascertaining who pawned the overcoat and
obtained the pawn check that was found in appellant's room. If he
did not pawn the overcoat, it is highly probable that whoever put the
pawn check in the drawer in his room also placed the overcoat and
trousers there, if they in fact were found there.

The learned court at first submitted to the jury the first and third
counts of the indictment, but, before concluding the charge, decided
to submit only the first count, charging burglary in the third degree.
The jury subsequently came into court, and reported that they were
"unable to agree on a verdict on the indictment of burglary in the
third degree," and requested that the court define burglary in the
third degree. The court complied with the request, and instructed the
jury that if some of the stolen property was found in the possession
of the defendants, and they did not give a satisfactory explanation of
their possession, they might find that the defendants committed the
burglary. Questions propounded to the court by some of the jurors in-
dicate that they thought that the evidence was sufficient to show that
the defendants were in possession of the stolen property with guilty
knowledge, but insufficient to show that they actually committed the

burglary, or aided and abetted in its commission. The court again instructed them that they must find defendants guilty of burglary in the third degree, or acquit. This indication of a division of opinion and doubt on the part of the jurors emphasizes the weakness of the evidence against the appellant upon which we have commented.

It follows that the judgment of conviction should be reversed, and a new trial ordered. All concur.

